Exhibit 5, Schedule 13D

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

# SCHEDULE 13D

**Under the Securities Exchange Act of 1934**
**(Amendment No. ________)***

# SAGALIAM ACQUISITION CORP

(Name of Issuer)

Common Stock, $0.0001 par value

(Title of Class of Securities)

78661R 106

(CUSIP Number)

Grant Reynolds
GLD Sponsor Member, LLC
10940 Wilshire Boulevard
Suite 705
Los Angeles, CA 90024
(212) 245-3413

(Name, Address and Telephone Number of Person
Authorized to Receive Notices and Communications)

April 25, 2023

(Date of Event which Requires Filing of this Statement)

If the filing person has previously filed a statement on Schedule 13G to report the acquisition that is the subject of this Schedule 13D, and is filing this schedule because of §§240.13d-1(e), 240.13d-1(f) or 240.13d-1(g), check the following box. ☐

**Note**: Schedules filed in paper format shall include a signed original and five copies of the schedule, including all exhibits. See §240.13d-7 for other parties to whom copies are to be sent.

* The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page.

The information required on the remainder of this cover page shall not be deemed to be "filed" for the purpose of Section 18 of the Securities Exchange Act of 1934 ("Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, see the Notes).

| | | | |
|---|---|---|---|
| 1. | NAMES OF REPORTING PERSONS I.R.S. IDENTIFICATION NOS. OF ABOVE PERSONS (ENTITIES ONLY)<br><br>GLD SPONSOR MEMBER, LLC | | |
| 2. | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP<br>(see instructions)<br>(a) ☐<br>(b) ☐ | | |
| 3. | SEC USE ONLY | | |
| 4. | SOURCE OF FUNDS (see instructions)<br><br>OO | | |
| 5. | CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d) or 2(e)<br>☐ | | |
| 6. | CITIZENSHIP OR PLACE OF ORGANIZATION<br><br>DELAWARE | | |
| NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH | | 7. | SOLE VOTING POWER<br><br>1,363,000[(1)] |
| | | 8. | SHARED VOTING POWER<br><br>0 |
| | | 9. | SOLE DISPOSITIVE POWER<br><br>1,363,000[(1)] |
| | | 10. | SHARED DISPOSITIVE POWER<br><br>0 |
| 11. | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON<br><br>1,363,000[(1)] | | |
| 12. | CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES<br>(see instructions) ☐ | | |
| 13. | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)<br><br>23.35% | | |
| 14. | TYPE OF REPORTING PERSON (see instructions)<br><br>OO | | |

(1) Includes 1,363,000 shares of the Issuer’s Class B Common Stock (“Class B Common Stock”).

| | | | |
|---|---|---|---|
| 1. | NAMES OF REPORTING PERSONS I.R.S. IDENTIFICATION NOS. OF ABOVE PERSONS (ENTITIES ONLY)<br><br>GLD PARTNERS, LP | | |
| 2. | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP<br>(see instructions)<br>(a) ☐<br>(b) ☐ | | |
| 3. | SEC USE ONLY | | |
| 4. | SOURCE OF FUNDS (see instructions)<br><br>OO | | |
| 5. | CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d) or 2(e)<br>☐ | | |
| 6. | CITIZENSHIP OR PLACE OF ORGANIZATION<br><br>DELAWARE | | |
| NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH | 7. | SOLE VOTING POWER<br><br>400,000(1)(2) | |
| | 8. | SHARED VOTING POWER<br><br>0 | |
| | 9. | SOLE DISPOSITIVE POWER<br><br>400,000(1)(2) | |
| | 10. | SHARED DISPOSITIVE POWER<br><br>0 | |
| 11. | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON<br><br>400,000(1)(2) | | |
| 12. | CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES<br>(see instructions) ☐ | | |
| 13. | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)<br><br>6.85% | | |
| 14. | TYPE OF REPORTING PERSON (see instructions)<br><br>PN | | |

(1) Includes 400,000 of the Issuer's Class A common stock, $0.0001 par value ("Class A Common Stock") underlying units (each unit consisting of one share of Class A Common Stock and one right entitling the holder to receive one-eighth of one Class A Common Stock upon consummation of the Issuer's initial business combination (the "Business Combination").

(2) Excludes 50,000 shares which may be acquired upon the conversion of 400,000 rights upon the consummation of the Business Combination.

| | | |
|---|---|---|
| 1. | NAMES OF REPORTING PERSONS I.R.S. IDENTIFICATION NOS. OF ABOVE PERSONS (ENTITIES ONLY)<br><br>DANIEL L. GORDON | |
| 2. | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP<br>(see instructions)<br>(a) ☐<br>(b) ☐ | |
| 3. | SEC USE ONLY | |
| 4. | SOURCE OF FUNDS (see instructions)<br><br>OO | |
| 5. | CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d) or 2(e)<br>☐ | |
| 6. | CITIZENSHIP OR PLACE OF ORGANIZATION<br><br>UNITED STATES | |
| NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH | 7. | SOLE VOTING POWER<br><br>1,763,000(1)(2) |
| | 8. | SHARED VOTING POWER<br><br>00,000 |
| | 9. | SOLE DISPOSITIVE POWER<br><br>1,763,000(1)(2) |
| | 10. | SHARED DISPOSITIVE POWER<br><br>00,000 |
| 11. | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON<br><br>1,763,000(1)(2) | |
| 12. | CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES<br>(see instructions) ☐ | |
| 13. | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)<br><br>30.20% | |
| 14. | TYPE OF REPORTING PERSON (see instructions)<br><br>IN | |

(1) Includes (i) 1,363,000 shares of the Issuer's Class B Common Stock ("Class B Common Stock") and (ii) 400,000 of the Issuer's Class A common stock, $0.0001 par value ("Class A Common Stock") underlying units (each unit consisting of one share of Class A Common Stock and one right entitling the holder to receive one-eighth of one Class A Common Stock upon consummation of the Issuer's initial business combination (the "Business Combination"). The managing member of GLD Sponsor Member, LLC is Daniel L. Gordon, and as such, Mr. Gordon may be deemed to beneficially own shares held directly by GLD Sponsor Member, LLC. The general partner of GLD Partners, LP is GLD Management, Inc. Mr. Gordon is the majority shareholder of GLD Management, Inc., and as such, may be deemed to beneficially own shares held directly by GLD Partners, LP.

(2) Excludes 50,000 shares which may be acquired upon the conversion of 400,000 rights upon the consummation of the Business Combination.

This Schedule 13D is filed on behalf of GLD Sponsor Member LLC, a Delaware limited liability company (the "GLDSM"), GLD Partners, LP ("GLDLP") and Daniel L. Gordon (the "Reporting Person").

**Item 1. Security and Issuer**

Securities acquired: Class A common stock, $0.0001 par value (the "Class A common stock") and Class B common stock, $0.0001 par value (the "Class B Common Stock," together with Class A Common Stock, the "Common Stock")

Issuer: Sagaliam Acquisition Corp. (the "Issuer")
1800 Avenue of the Stars, Suite 1475
Los Angeles, CA 900067

**Item 2. Identity and Background.**

(a) This statement is filed by:

(i) GLDSM which is the holder of record of approximately 23.35% of the issued and outstanding shares of all classes of common stock of the Issuer outstanding as of December 22, 2022.

(ii) GLDLP which is the holder of record of approximately 6.85% of the issued and outstanding shares of all classes of common stock of the Issuer outstanding as of December 22, 2022.

(iii) Daniel L. Gordon, the managing member of GLDSM and the majority shareholder of GLD Management, Inc., the general partner of GLDLP.

All disclosures herein with respect to the Reporting Person are made only by the Reporting Person. Any disclosures herein with respect to persons other than the Reporting Person are made on information and belief after making inquiry to the appropriate party.

(b) The address of the principal business and principal office of each of the Reporting Persons is 10940 Wilshire Boulevard, Suite 705, Los Angeles, CA 90024.

(c) GLDSM's principal business is to act as the sole member of Sagaliam Sponsor, LLC ("Sponsor"). GLDLP's principal business is to make investments in certain businesses, asset types and securities. GLDLP is a member of GLDSM.

(d) The Reporting Person has not, during the last five years, been convicted in a criminal proceeding (excluding traffic violations or similar misdemeanors).

(e) The Reporting Person has not, during the last five years, been a party to a civil proceeding of a judicial administrative body of competent jurisdiction and, as a result of such proceeding, was, or is subject to, a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, Federal or state securities laws or finding any violation with respect to such laws.

(f) GLDSM is a Delaware limited liability company. GLDLP is a Delaware limited partnership. Daniel Gordon is a citizen of the United States.

**Item 3. Source or Amount of Funds or Other Consideration.**

The Common Stock subject to this Schedule 13D was transferred by Sponsor to GLDSM pursuant to the terms of the Share Distribution Agreement and the Securities Distribution Agreement (as defined below). The source of these funds was the working capital of GLDSM. The Private Placement Units were transferred by GLDSM to GLDLP pursuant to the terms of the GLDLP Securities Distribution Agreement (as defined below).

**Item 4. Purpose of Transaction.**

On April 5, 2021, Sponsor purchased 2,875,000 shares of Class B common stock (the "Founder Shares") for an aggregate purchase price of $25,000, pursuant to a Securities Subscription Agreement dated April 5, 2021, between the Sponsor and the Issuer (the "Purchase Agreement"), as more fully described in Item 6 of this Schedule 13D which information is incorporated herein by reference. GLDSM is the sole member of Sponsor. GLDLP is a member of GLDSM.

On December 23, 2021, simultaneously with the closing of the Issuer's initial public offering, the Sponsor purchased 400,000 units ("Private Placement Units") of the Issuer at $10.00 per Private Placement Unit, pursuant to a Unit Subscription Agreement, dated December 20, 2021, by and between the Issuer and the Sponsor (the "Subscription Agreement"), as more fully described in Item 6 of this Schedule 13D, which information is incorporated herein by reference.

On April 25, 2023, Sponsor and GLDSM entered into a Share Distribution Agreement pursuant to which Sponsor distributed to GLDSM 1,363,000 shares of Class B Common Stock.

On April 25, 2023, Sponsor and GLDSM entered into a Securities Distribution Agreement pursuant to which Sponsor distributed to GLDSM 400,000 Private Placement Units.

On April 25, 2023, GLDSM and GLDLP entered into a Securities Distribution Agreement pursuant to which GLDSM distributed to GLDLP 400,000 Private Placement Units (the "GLDLP Securities Distribution Agreement).

The Common Stock owned by the Reporting Person has been acquired for investment purposes. The Reporting Person may make further acquisitions of the Common Stock from time to time and, subject to certain restrictions, may dispose of any or all of the Common Stock held by the Reporting Person at any time depending on an ongoing evaluation of the investment in such securities, prevailing market conditions, other investment opportunities and other factors. However, certain of such shares are subject to certain lock-up restrictions as further described in Item 6 below.

Except for the foregoing, the Reporting Person has no plans or proposals which relate to, or could result in, any of the matters referred to in paragraphs (a) and (c) through (j) of Item 4 of Schedule 13D.

With respect to paragraph (b) of Item 4, the Issuer is a blank check company formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination with one or more businesses. Under various agreements between the Issuer and the Reporting Person as further described in Item 6 below, the Reporting Person has agreed (A) to vote the Founder Shares, the Private Placement Units and any public shares owned by them in favor of any proposed business combination, (B) not to propose an amendment to the Issuer's amended and restated certification of incorporation with respect to the Issuer's pre-business combination activities prior to the consummation of such a business combination (C) not to redeem any shares (including Founder Shares and Private Placement Units) into the right to receive cash from the trust account in connection with a stockholder vote to approve the Issuer's initial business combination or a vote to amend the provisions of the Issuer's amended and restated certificate of incorporation relating to stockholders' rights or pre-business combination activity and (D) that the Founder Shares (as defined below) and Private Placement Units shall not participate in any liquidating distribution upon winding up if a business combination is not consummated. The Reporting Person may, at any time and from time to time, review or reconsider their positions, change their purposes or formulate plans or proposals with respect to the Issuer.

**Item 5. Interest in Securities of the Issuer.**

(a)-(b) The aggregate number and percentage of Common Stock beneficially owned by the Reporting Persons (on the basis of a total of 5,837,222 shares of Common Stock outstanding as of December 22, 2022) are as follows:

**GLD Sponsor Member, LLC**

a) Amount beneficially owned: 1,363,000 Percentage: 23.35%
b) Number of shares to which the Reporting Person has:
   a. Sole power to vote or direct the vote: 1,363,000
   b. Shares power to vote or to direct the vote: 0
   c. Sole power to dispose or to direct the disposition of: 1,363,000
   d. Shared power to dispose or to direct the disposition of: 0

**GLD Partners, LP**

a) Amount beneficially owned: 400,000 Percentage: 6.85%
b) Number of shares to which the Reporting Person has:
   a. Sole power to vote or direct the vote: 400,000
   b. Shares power to vote or to direct the vote: 0

| | | |
|---|---|---|
| c. | Sole power to dispose or to direct the disposition of: | 400,000 |
| d. | Shared power to dispose or to direct the disposition of: | 0 |

**Daniel Gordon**

a) Amount beneficially owned: 1,763,000 Percentage: 30.20%

b) Number of shares to which the Reporting Person has:

| | | |
|---|---|---|
| a. | Sole power to vote or direct the vote: | 1,763,000 |
| b. | Shares power to vote or to direct the vote: | 0 |
| c. | Sole power to dispose or to direct the disposition of: | 1,763,000 |
| d. | Shared power to dispose or to direct the disposition of: | 0 |

Daniel Gordon is the managing member of GLDSM. As such, he may be deemed to have beneficial ownership of the Common Stock held directly by GLDSM. Mr. Gordon is also the majority shareholder of GLD Management, Inc., the general partner of GLDLP. As such, he may be deemed to have beneficial ownership of the Common Stock held directly by GLDLP. Such person disclaims any beneficial ownership of the reported shares other than to the extent of any pecuniary interest he may have therein, directly or indirectly.

(c) None of the Reporting Persons have effected any transactions of the Issuer's Common Stock during the 60 days preceding the date of this report.

(d) Not applicable.

(e) Not applicable.

**Item 6. Contracts, Arrangements, Understandings or Relationships with Respect to Securities of the Issuer.**

*Founder Securities Purchase Agreement between the Issuer and Sponsor*

On April 5, 2021, the Sponsor purchased 2,875,000 Founder Shares for an aggregate purchase price of $25,000, pursuant to the Purchase Agreement.

Under the Purchase Agreement, the Sponsor acknowledged that the Founder Shares would be subject to certain lock-up provisions to be contained in the Insider Letter (as defined below). The description of the lock-up is described further under "Insider Letter" in this Item 6 below.

The description of the Purchase Agreement is qualified in its entirety by reference to the full text of such agreement, a copy of which was filed as Exhibit 10.5 to the Registration Statement on Form S-1 filed by the Issuer with the SEC on May 25, 2021, as amended (and is incorporated by reference herein as Exhibit 10.1).

*Unit Subscription Agreement between the Issuer and Sponsor*

On December 23, 2021, simultaneously with the closing of the initial public offering of the Issuer ("IPO"), the Sponsor purchased 400,000 Private Placement Units pursuant to the Subscription Agreement. The Placement Units and the securities underlying the Private Placement Units are subject to a lock-up provision in the Subscription Agreement, which provides that such securities shall not be transferable, saleable or assignable until 30 days after the completion of the Issuer's initial business combination, subject to certain limited exceptions as described in the Insider Letter.

The description of the Subscription Agreement is qualified in its entirety by reference to the full text of such agreement, a copy of which was filed by the Issuer as Exhibit 10.4 to the Current Report on Form 8-K filed by the Issuer with the SEC on December 27, 2021 (and is incorporated by reference herein as Exhibit 10.2).

*Insider Letter*

On December 20, 2021, in connection with the IPO, the Issuer and the Sponsor entered into a letter agreement (the "Insider Letter"), pursuant to which the Sponsor agreed, if the Issuer seeks stockholder's approval of a proposed Business Combination, the Sponsor shall (A) vote any shares of Common Stock owned by it in favor of any proposed Business Combination and (B) not redeem any shares of Common Stock owned by it in connection with such stockholder approval. The Sponsor also agreed not to propose an amendment to the Issuer's amended and restated certificate of incorporation to modify (i) the substance or timing of the ability of holders of Common Stock to seek redemption in connection with a Business Combination or amendments to the amended and restated certificate of incorporation prior thereto or (ii) (A) the Issuer's obligation to redeem 100% of the Common Stock if the Issuer does not complete a Business Combination within such time set forth in the amended and restated certificate of incorporation or (B) any other provisions relating to stockholders' rights or pre-initial Business Combination activity, unless the Issuer provides its public stockholders with the opportunity to redeem their shares of Common Stock upon approval of any such amendment at a per-share price, payable in cash, equal to the aggregate amount then on deposit in the trust account, including interest earned on the funds held in the trust account and not previously released to the Company to pay its taxes, divided by the number of then outstanding Common Stock.

The Sponsor also agreed not to redeem any Common Stock held by it (including the Founder Shares and Private Placement Units) into the right to receive cash from the trust account in connection with a stockholder vote to approve the Business Combination. If the Issuer engages in a tender offer in connection with any proposed Business Combination, the Sponsor agrees that it, he or she will not seek to sell its, his or her shares of Common Stock to the Issuer in connection with such tender offer.

The Sponsor also agreed that in the event of the liquidation of the trust account upon the failure of the Issuer to consummate its initial Business Combination within the time period set forth in the amended and restated certificate of incorporation, it will indemnify and hold harmless the Issuer against any and all loss, liability, claims, damage and expense whatsoever (including, but not limited to, any and all legal or other expenses reasonably incurred in investigating, preparing or defending against any litigation, whether pending or threatened) to which the Issuer may become subject as a result of any claim by (i) any third party for services rendered (other than the Issuer's independent public accountants) or products sold to the Issuer or (ii) any prospective target business with which the Issuer has entered into a written letter of intent, confidentiality or other similar agreement or Business Combination agreement; provided, however, that such indemnification shall (x) apply only to the extent necessary to ensure that such claims by a third party or a target of the Business Combination do not reduce the amount of funds in the trust account to below the lesser of (i) $10.00 per share of the public common stock and (ii) the actual amount per share of public common stock held in the trust account as of the date of the liquidation of the trust account, if less than $10.00 share of the public common stock is then held in the trust account due to reductions in the value of the trust assets, less interest earned on the trust account which may be withdrawn to pay taxes, (y) not apply to any claims by a third party or a target of the Business Combination which executed a waiver of any and all rights to the monies held in the trust account (whether or not such waiver is enforceable) and (z) not apply to any claims under the Issuer's indemnity of the underwriters against certain liabilities, including liabilities under the Securities Act of 1933, as amended. The Sponsor shall have the right to defend against any such claim with counsel of its choice reasonably satisfactory to the Issuer if, within 15 days following written receipt of notice of the claim to the Sponsor, the Sponsor notifies the Issuer in writing that it shall undertake such defense.

The Insider Letter provides that the Sponsor may not transfer any Founder Shares (or shares of Common Stock issuable upon conversion thereof) until the earlier of (A) six months after the completion of the Issuer's initial Business Combination or (B) subsequent to the Business Combination, (x) if the last sale price of the Common Stock equals or exceeds $12.00 per share (as adjusted for stock splits, stock dividends, reorganizations, recapitalizations and the like) for any 20 trading days within any 30-trading day period commencing at least 150 days after the Issuer's initial Business Combination or (y) the date on which the Issuer completes a liquidation, merger, capital stock exchange, reorganization or other similar transaction that results in all of the Issuer's stockholders having the right to exchange their shares of Common Stock for cash, securities or other property.

The description of the Insider Letter is qualified in its entirety by reference to the full text of such agreement, a copy of which was filed by the Issuer as Exhibit 10.1 to the Form 8-K filed by the Issuer with the SEC on December 27, 2021 (and is incorporated by reference herein as Exhibit 10.3).

*Waiver Letter*

On April 12, 2023, EF Hutton, division of Benchmark Investments, LLC ("EF Hutton"), Sponsor and Issuer entered into that certain Waiver Letter pursuant to which EF Hutton and Issuer waived certain restrictions previously imposed pursuant to the Insider Letter and designated certain parties as Permitted Transferees as such term is defined in the Insider Letter. Pursuant to the Waiver Letter, GLDSM was designated as a Permitted Transferee pursuant to the Insider Letter and has agreed to be bound by the terms and conditions set forth in the Insider Letter.

*Securities Distribution Agreement*

On April 25, 2023, Sponsor and GLDSM entered into that certain Securities Distribution Agreement pursuant to which Sponsor transferred to GLDSM 400,000 Private Placement Units subject to certain transfer restrictions and other requirements as more fully described in the Insider Letter.

*GLDLP Securities Distribution Agreement*

On April 25, 2023, GLDLP and GLDSM entered into the GLDLP Securities Distribution Agreement pursuant to which GLDSM transferred to GLDLP 400,000 Private Placement Units subject to certain transfer restrictions and other requirements as more fully described in the Insider Letter.

*Share Distribution Agreement*

On April 25, 2023, Sponsor and GLDSM entered into that certain Securities Distribution Agreement pursuant to which Sponsor transferred to GLDSM 1,363,000 shares of Class B Common Stock subject to certain transfer restrictions and other requirements as more fully described in the Insider Letter.

**Item 7. Material to Be Filed as Exhibits.**

Exhibit 10.1 Securities Subscription Agreement, dated as of April 5, 2021, by and between the Issuer and the Sponsor (incorporated by reference to Exhibit 10.5 to the Registration Statement on Form S-1 filed by the Issuer with the SEC on May 25, 2021, as amended).

Exhibit 10.2 Unit Subscription Agreement, dated as of December 20, 2021, by and between the Issuer and the Sponsor (incorporated by reference to Exhibit 10.4 to the Current Report on Form 8-K filed by the Issuer with the SEC on December 27, 2021).

Exhibit 10.3 Insider Letter, dated as of December 20, 2021, by and between the Issuer, the Sponsor and the Issuer's officers and directors (incorporated by reference to Exhibit 10.1 to the Current Report on Form 8-K filed by the Issuer with the SEC on December 27, 2021).

Exhibit 10.4 Waiver Letter dated as of April 12, 2023 by and between Sagaliam Acquisition Corp., EF Hutton, division of Benchmark Investments, LLC and Sagaliam Sponsor, LLC.

Exhibit 10.5 Share Distribution Agreement dated as of April 25, 2023 by and between Sagaliam Sponsor, LLC and GLD Sponsor Member, LLC.

Exhibit 10.6 Securities Distribution Agreement dated as of April 25, 2023 by and between Sagaliam Sponsor, LLC and GLD Sponsor Member, LLC

Exhibit 10.7 GLDLP Securities Distribution Agreement dated as of April 25, 2023 by and between GLD Sponsor Member, LLC and GLD Partners, LP

Exhibit 99.1 Joint Filing Agreement by and between the Reporting Persons.

**SIGNATURE**

After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete and correct.

GLD SPONSOR MEMBER, LLC

*/s/ Daniel Gordon*
Daniel Gordon

Managing Member

May 10, 2023

GLD PARTNERS, LP

By: GLD Management, Inc., its General Partner

*/s/ Daniel Gordon*
Daniel Gordon

President

May 10, 2023

*/s/ Daniel Gordon*
Daniel Gordon

May 10, 2023

**Exhibit 10.4**

EF Hutton

Personal and Confidential

April 12, 2023

**Sagaliam Acquisition Corp.**
1800 Avenue of the Stars, Suite 1475
Los Angeles, CA 90067

**EF Hutton, division of Benchmark Investments, LLC** (the "Representative")
590 Madison Avenue, 39th Floor
New York NY 10022

Re: Sagaliam Acquisition Corp. (the "Company")

Ladies and Gentlemen:

Reference is made to the Insider Letter dated December 20, 2021, from Sagaliam Sponsor, LLC (the "Sponsor") and certain other insiders, to the Company (the "Insider Letter"). Capitalized terms used in this waiver (this "Waiver") but not defined in this Waiver shall have the meanings ascribed to such terms in the Insider Letter.

Pursuant to the Insider Letter, no Transfer of Founder Shares are permitted except in accordance with Section 7(a) and 7(c) of the Insider Letter and to any Permitted Transferees that have agreed to be bound, among other things, by the transfer restrictions and other restrictions in the Insider Letter. As part of a reorganization of the Sponsor, the Sponsor desires to Transfer certain Founder Shares to various individuals and/or third-party entities (each a "Transferee") as more fully set forth in Exhibit A attached hereto. In order to properly effect the Transfer of such Founder Shares (the "Transferred Shares"), the Sponsor has been advised that it must seek the consent of the Company and the Representative.

Accordingly, the Sponsor is requesting the consent of the Company and the Representative to (a) the transfer of certain Founder Shares to those Transferees as set forth on Exhibit A, and (b) consent to legal ownership of the Transferred Shares being transferred to the Transferees set forth in Exhibit A, in connection with which such Transferred Shares shall be immediately registered in the name of the parties set forth in Exhibit A or their designees promptly after the execution of this letter. Furthermore, the undersigned acknowledges and agrees that notwithstanding anything contained in the Insider Letter, each of the parties set forth in Exhibit A shall be deemed a "*Permitted Transferee*", as such term is defined in the Insider Letter and which specifically stipulates that a Permitted Transferee must enter into a written agreement with the Company agreeing to be bound by the transfer restrictions therein.

Other than as set forth above, the terms and conditions of the Insider Letter shall remain in full force and effect.

This shall be governed by, and construed in accordance with, the laws of the State of New York. This Waiver may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an

original and all of which taken together shall constitute but one and the same instrument. In furtherance of the foregoing, it is understood and agreed that signatures hereto submitted by facsimile or other electronic transmission shall be deemed to be, and shall constitute, original signatures.

[*Signature page follows*]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**SAGALIAM SPONSOR, LLC**

By: /s/ Daniel Gordon
Name: Daniel Gordon
Title: Manager

Accepted, Agreed and Acknowledged by:

**SAGALIAM ACQUISITION CORP.**

By: /s/ Barry Kostiner
Name: Barry Kostiner
Title: Chief Executive Officer

**EF HUTTON, division of Benchmark Investments, LLC**
As Representative of the several Underwriters

By: Sam Fleischman
Name: Sam Fleischman
Title: Supervisory Principal

*[Exhibit A follows]*

## Exhibit A

**Sagaliam Sponsor LLC – Existing Capitalization Table**

| | |
|---|---|
| **Private Placement of Class A Units** | **400,000** |
| Distribution of Class A Units: | |
| GLD Sponsor Member, LLC (or designee) | 400,000 |
| | |
| **Allocation of Class B Shares** | **2,675,000** |
| Distribution of Class B Shares: | |
| GLD Sponsor Member, LLC (or designee) | 613,000 |
| AHG Equities, LLC | 750,000 |
| Daniel Janoff | 44,445 |
| Deventer, LLC | 62,222 |
| Zalman Ungar | 71,111 |
| Shimon Lefkowitz | 8,333 |
| Samuel Guttman | 5,556 |
| GSM CR Trust | 83,333 |
| James O'Donnell | 66,667 |
| Clay Brock | 33,333 |
| Tom O'Connell | 33,333 |
| Cary Sucoff | 20,000 |
| **Total Class B Shares Transferred** | **1,791,333** |

**Exhibit 10.5**

**SHARE DISTRIBUTION AGREEMENT**

This Share Distribution Agreement ("***Agreement***") is effective this 25th day of April, 2023 ("***Effective Date***") between Sagaliam Sponsor LLC, a Delaware limited liability company, whose address is c/o GLD Sponsor Member LLC, 11420 Santa Monica Boulevard, Box 251961, Los Angeles CA 90025 ("***Sponsor***") and the sole member of Sponsor, GLD Sponsor Member, LLC, a Delaware limited liability company, whose address is 11420 Santa Monica Boulevard, Box 251961, Los Angeles CA 90025 ("***Distributee***" or "***Member***").

WHEREAS, the Distributee holds 100% of the membership interests in Sponsor, and

WHEREAS, Sponsor desires to distribute shares to Distributee in the exact proportion to Distributee's membership interests in Sponsor (the "***Distributed Shares***"), and Distributee consents to the distribution (the "***Distribution***") of the Distributed Shares, and

WHEREAS, Sponsor has agreed with Sagaliam Acquisition Corporation (the "***Company***" or "***Sagaliam***") and EF Hutton, division of Benchmark Investments, LLC that the distribution of the Distributed Shares to Distributee is in compliance with all applicable agreements related to assignment of shares of the Company, and

WHEREAS, there is no public market for the Distributed Shares, and

WHEREAS, the Distributed Shares may be sold in the public markets only after they have been exchanged for publicly traded shares of a public company and only after the Distributed Shares have been registered for resale in a current, effective registration statement or there is an exemption to the registration requirement available under the federal securities laws (collectively, the "***Transfer Restrictions***"), and

WHEREAS, there is no requirement to establish the availability of an exemption under the federal securities laws for this Distribution because there is no change of beneficial interest resulting from this Distribution to the Member.

Now, therefore, in consideration of the representations, warranties, covenants, payment and other agreements contained herein, the parties hereto hereby agree as follows:

**1. <u>DISTRIBUTION OF SHARES</u>**

**1.1.** On the terms and subject to the conditions of this Agreement, Sponsor hereby agrees to distribute the Distributed Shares pursuant to Section 1.2 below.

**1.2.** Sponsor will distribute 1,363,000 Class B Shares of the Company's restricted common stock to Distributee as a distribution. Sponsor shall deliver transfer instructions for the Distributed Shares to Continental Stock Transfer & Trust Co., the stock transfer agent for Company ("***Transfer Agent***"). As used in this Agreement, "Distributed Shares" shall include all the Distributed Shares and all securities received (a) in replacement of the Distributed Shares, (b) as a result of stock dividends or stock splits in respect of the Distributed Shares and (c) as substitution for the Distributed Shares in a recapitalization, merger, reorganization or the like.

**1.3.** This distribution of the Distributed Shares will not result in any change in the percentage of beneficial interest of the Member/Distributee because the distribution is pro rata. No consideration has been or will be given by the Member/Distributee to Sponsor in exchange for this distribution. Under the available guidance by the Securities and Exchange Commission, a new holding period will not begin for the Member/Distributee.

**1.4.** Sponsor shall direct the Company to instruct the Transfer Agent to distribute the Distributed Shares to the Distributee in book entry form in the exact proportion to the Distributee's membership interests in Sponsor.

**2. COMPLIANCE WITH LAWS AND REGULATIONS.** The distribution of the Distributed Shares will be subject to and conditioned upon compliance by Sponsor and the Distributee with all applicable state and federal statutes, rules and regulations.

**3. TRANSFER RESTRICTIONS.** Distributee understands and agrees that the Distributed Shares will be noted in the shareholder records as restricted stock that may only be sold in the public markets if they are registered for resale in a current, effective registration statement or pursuant to an exemption under the federal securities laws. Distributee agrees to comply with any applicable leak-out agreement among EF Hutton, the Sponsor and the Company until and unless those restrictions expire or Distributee is released from such restrictions. If Distributee should request the issuance of a paper stock certificate at any time, a Rule 144 restrictive legend will be stamped on the certificate with the usual wording used by the Transfer Agent which is substantially as set forth below:

> **"The shares represented by this certificate have not been registered under the Securities Act of 1933, and may not be sold, transferred or otherwise disposed unless, in the opinion of counsel satisfactory to the issuer, the transfer qualifies for an exemption from or exemption to the registration provisions thereof."**

**4. GENERAL PROVISIONS.**

**4.1. Parties in Interest; Third Party Beneficiary.** No party other than Sponsor and Distributee (the "***Parties***") and their permitted successors and assigns shall be accorded or recognized as having any rights or interests in or under this Agreement as a third-party beneficiary or otherwise.

**4.2. Successors and Assigns.** Except as otherwise provided in this Agreement, this Agreement, and the rights and obligations of the parties hereunder, will be binding upon and inure to the benefit of their respective successors, assigns, heirs, executors, administrators and legal representatives.

**4.3. Governing Law and Arbitration.** This Agreement will be governed by and construed in accordance with the laws of the State of Delaware without giving effect to that body of laws pertaining to conflict of laws. Any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in the courts of Los Angeles County, California. Any arbitration will be held in Los Angeles, California. Any Party to the arbitration may elect to appear by video conference.

**4.4. Notices.** Any and all notices required or permitted to be given to a party pursuant to the provisions of this Agreement will be in writing and will be effective and deemed to provide such party sufficient notice under this Agreement on the earliest of the following: (a) at the time of personal delivery, if delivery is in person; (b) one (1) business day after deposit with an express overnight delivery using Federal Express, UPS or similar service for United States deliveries, or two (2) business days after such deposit for deliveries outside of the United States; or (c) three (3) business days after deposit in the United States mail by USPS Priority Express Mail for United States deliveries. All notices for delivery outside the United States will be sent by express courier such as those referenced above. All notices not delivered personally will be sent with postage and/or other charges prepaid and properly addressed to the party to be notified at the address set forth below the signature lines of this Agreement or at such other address as such other party may designate by one of the indicated means of notice herein to the other party hereto. A "***business day***" shall be a day, other than Saturday or Sunday, when United States banks in Los Angeles, California, are open for business.

**4.5. Further Assurances.** The Parties agree to execute such further documents and instruments and to take such further actions as may be reasonably necessary to carry out the purposes and intent of this Agreement.

**4.6. Titles and Headings.** The titles, captions and headings of this Agreement are included for ease of reference only and will be disregarded in interpreting or construing this Agreement. Unless otherwise specifically stated, all references herein to "sections" and "exhibits" will mean "sections" and "exhibits" to this Agreement.

**4.7. Entire Agreement**. This Agreement and the documents referred to herein constitute the entire agreement and understanding of the parties with respect to the subject matter of this Agreement, and supersede all prior understandings and agreements, whether oral or written, between or among the Parties hereto with respect to the specific subject matter hereof.

**4.8. Severability.** If any provision of this Agreement is determined by any court of competent jurisdiction to be invalid, illegal or unenforceable, such provision will be enforced to the maximum extent possible given the intent of the parties hereto. If such clause or provision cannot be so enforced, such provision shall be stricken from this Agreement and the remainder of this Agreement shall be enforced as if such invalid, illegal or unenforceable clause or provision had (to the extent not enforceable) never been contained in this Agreement. Notwithstanding the forgoing, if the value of this Agreement based upon the substantial benefit of the bargain for any party is materially impaired, which determination as made by the presiding court of competent jurisdiction shall be binding, then both parties agree to substitute such provision(s) through good faith negotiations.

**4.9. Amendment and Waivers.** Terms of this Agreement may be amended or waived only by a written agreement executed by Sponsor and Distributee, provided that any term hereof may be waived by any waiving party on such party's own behalf, without the consent of any other party. Any amendment or waiver will be binding upon all parties hereto and each of their respective successors and assigns. No delay or failure to require performance of any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance. No waiver granted under this Agreement as to any one provision herein shall constitute a subsequent waiver of such provision or of any other provision herein, nor shall it constitute the waiver of any performance other than the actual performance specifically waived.

**4.10. Confidentiality.** Unless required by applicable law, Distributee and Sponsor agree to keep confidential and not disclose the existence of this Agreement, the terms and conditions of this Agreement and the transactions contemplated hereby, the discussions and negotiations regarding this Agreement and any other related information.

**4.11. Counterparts; Facsimile Signatures.** This Agreement may be executed in any number of counterparts, each of which when so executed and delivered will be deemed an original, and all of which together shall constitute one and the same agreement. This Agreement may be executed and delivered by facsimile and upon such delivery the facsimile signature will be deemed to have the same effect as if the original signature had been delivered to the other party.

**IN WITNESS WHEREOF**, Sponsor and Distributee have executed this Agreement, as of the Effective Date.

*/s/ Daniel Gordon*
Daniel Gordon, Manager
GLD Sponsor Member, LLC
Managing Member of Sagaliam Sponsor, LLC

*/s/ Daniel Gordon*
GLD Sponsor Member, LLC
Daniel Gordon, Manager

EX-10.6 4 ex10-6.htm

**Exhibit 10.6**

# SECURITIES DISTRIBUTION AGREEMENT

This Securities Distribution Agreement ("***Agreement***") is effective this 25th day of April, 2023 ("***Effective Date***") between Sagaliam Sponsor LLC, a Delaware limited liability company, whose address is c/o GLD Sponsor Member LLC, 11420 Santa Monica Boulevard, Box 251961, Los Angeles CA 90025 ("***Sponsor***") and the sole member of Sponsor, GLD Sponsor Member, LLC, a Delaware limited liability company, whose address is 11420 Santa Monica Boulevard, Box 251961, Los Angeles CA 90025 ("***Distributee***" or "***Member***").

WHEREAS, the Distributee holds 100% of the membership interests in Sponsor, and

WHEREAS, Sponsor desires to distribute securities to Distributee in the exact proportion to Distributee's membership interests in Sponsor (the "***Distributed Securities***"), and Distributee consents to the distribution (the "***Distribution***") of the Distributed Securities, and

WHEREAS, Sponsor has agreed with Sagaliam Acquisition Corporation (the "***Company***" or "***Sagaliam***") and EF Hutton, division of Benchmark Investments, LLC that the distribution of the Distributed Securities to Distributee is in compliance with all applicable agreements related to assignment of shares of the Company, and

WHEREAS, the Distributed Securities may be sold in the public markets only after they have been registered for resale in a current, effective registration statement or there is an exemption to the registration requirement available under the federal securities laws (collectively, the "***Transfer Restrictions***"), and

WHEREAS, there is no requirement to establish the availability of an exemption under the federal securities laws for this Distribution because there is no change of beneficial interest resulting from this Distribution to the Member.

Now, therefore, in consideration of the representations, warranties, covenants, payment and other agreements contained herein, the parties hereto hereby agree as follows:

## 1. DISTRIBUTION OF SHARES

**1.1.** On the terms and subject to the conditions of this Agreement, Sponsor hereby agrees to distribute the Distributed Securities pursuant to Section 1.2 below.

**1.2.** Sponsor will distribute an aggregate 400,000 Units (the Units trade in the public markets under the ticker symbol "SAGAU", CUSIP 78661R205) to Distributee as a distribution. Sponsor shall deliver transfer instructions for the Distributed Securities to Continental Stock Transfer & Trust Co., the stock transfer agent for Company ("***Transfer Agent***"). As used in this Agreement, "Distributed Securities" shall include all the Distributed Securities and all securities received (a) in replacement of the Distributed Securities, (b) as a result of stock dividends or stock splits in respect of the Distributed Securities and (c) as substitution for the Distributed Securities in a recapitalization, merger, reorganization or the like.

**1.3.** This distribution of the Distributed Securities will not result in any change in the percentage of beneficial interest of the Member/Distributee because the distribution is pro rata. No consideration has been or will be given by the Member/Distributee to Sponsor in exchange for this distribution. Under the available guidance by the Securities and Exchange Commission, a new holding period will not begin for the Member/Distributee.

**1.4.** Sponsor shall direct the Company to instruct the Transfer Agent to distribute the Distributed Securities to the Distributee in book entry form in the exact proportion to the Distributee's membership interests in Sponsor.

**2. COMPLIANCE WITH LAWS AND REGULATIONS.** The distribution of the Distributed Securities will be subject to and conditioned upon compliance by Sponsor and the Distributee with all applicable state and federal statutes, rules and regulations.

**3. TRANSFER RESTRICTIONS.** Distributee understands and agrees that the Distributed Securities will be noted in the shareholder records as restricted stock that may only be sold in the public markets if they are registered for resale in a current, effective registration statement or pursuant to an exemption under the federal securities laws. Distributee agrees to comply with any applicable leak-out agreement among EF Hutton, the Sponsor and the Company until and unless those restrictions expire or Distributee is released from such restrictions. If Distributee should request the issuance of a paper stock certificate at any time, a Rule 144 restrictive legend will be stamped on the certificate with the usual wording used by the Transfer Agent which is substantially as set forth below:

> **"The shares represented by this certificate have not been registered under the Securities Act of 1933, and may not be sold, transferred or otherwise disposed unless, in the opinion of counsel satisfactory to the issuer, the transfer qualifies for an exemption from or exemption to the registration provisions thereof."**

**4. GENERAL PROVISIONS.**

**4.1. Parties in Interest; Third Party Beneficiary.** No party other than Sponsor and Distributee (the "***Parties***") and their permitted successors and assigns shall be accorded or recognized as having any rights or interests in or under this Agreement as a third-party beneficiary or otherwise.

**4.2. Successors and Assigns.** Except as otherwise provided in this Agreement, this Agreement, and the rights and obligations of the parties hereunder, will be binding upon and inure to the benefit of their respective successors, assigns, heirs, executors, administrators and legal representatives.

**4.3. Governing Law and Arbitration.** This Agreement will be governed by and construed in accordance with the laws of the State of Delaware without giving effect to that body of laws pertaining to conflict of laws. Any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in the courts of Los Angeles County, California. Any arbitration will be held in Los Angeles, California. Any Party to the arbitration may elect to appear by video conference.

**4.4. Notices.** Any and all notices required or permitted to be given to a party pursuant to the provisions of this Agreement will be in writing and will be effective and deemed to provide such party sufficient notice under this Agreement on the earliest of the following: (a) at the time of personal delivery, if delivery is in person; (b) one (1) business day after deposit with an express overnight delivery using Federal Express, UPS or similar service for United States deliveries, or two (2) business days after such deposit for deliveries outside of the United States; or (c) three (3) business days after deposit in the United States mail by USPS Priority Express Mail for United States deliveries. All notices for delivery outside the United States will be sent by express courier such as those referenced above. All notices not delivered personally will be sent with postage and/or other charges prepaid and properly addressed to the party to be notified at the address set forth below the signature lines of this Agreement or at such other address as such other party may designate by one of the indicated means of notice herein to the other party hereto. A "***business day***" shall be a day, other than Saturday or Sunday, when United States banks in Los Angeles, California, are open for business.

**4.5. Further Assurances.** The Parties agree to execute such further documents and instruments and to take such further actions as may be reasonably necessary to carry out the purposes and intent of this Agreement.

**4.6. Titles and Headings.** The titles, captions and headings of this Agreement are included for ease of reference only and will be disregarded in interpreting or construing this Agreement. Unless otherwise specifically stated, all references herein to "sections" and "exhibits" will mean "sections" and "exhibits" to this Agreement.

**4.7. Entire Agreement**. This Agreement and the documents referred to herein constitute the entire agreement and understanding of the parties with respect to the subject matter of this Agreement, and supersede all prior understandings and agreements, whether oral or written, between or among the Parties hereto with respect to the specific subject matter hereof.

**4.8. <u>Severability</u>.** If any provision of this Agreement is determined by any court of competent jurisdiction to be invalid, illegal or unenforceable, such provision will be enforced to the maximum extent possible given the intent of the parties hereto. If such clause or provision cannot be so enforced, such provision shall be stricken from this Agreement and the remainder of this Agreement shall be enforced as if such invalid, illegal or unenforceable clause or provision had (to the extent not enforceable) never been contained in this Agreement. Notwithstanding the forgoing, if the value of this Agreement based upon the substantial benefit of the bargain for any party is materially impaired, which determination as made by the presiding court of competent jurisdiction shall be binding, then both parties agree to substitute such provision(s) through good faith negotiations.

**4.9. <u>Amendment and Waivers</u>.** Terms of this Agreement may be amended or waived only by a written agreement executed by Sponsor and Distributee, provided that any term hereof may be waived by any waiving party on such party's own behalf, without the consent of any other party. Any amendment or waiver will be binding upon all parties hereto and each of their respective successors and assigns. No delay or failure to require performance of any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance. No waiver granted under this Agreement as to any one provision herein shall constitute a subsequent waiver of such provision or of any other provision herein, nor shall it constitute the waiver of any performance other than the actual performance specifically waived.

**4.10. <u>Confidentiality</u>.** Unless required by applicable law, Distributee and Sponsor agree to keep confidential and not disclose the existence of this Agreement, the terms and conditions of this Agreement and the transactions contemplated hereby, the discussions and negotiations regarding this Agreement and any other related information.

**4.11. <u>Counterparts; Facsimile Signatures</u>.** This Agreement may be executed in any number of counterparts, each of which when so executed and delivered will be deemed an original, and all of which together shall constitute one and the same agreement. This Agreement may be executed and delivered by facsimile and upon such delivery the facsimile signature will be deemed to have the same effect as if the original signature had been delivered to the other party.

**IN WITNESS WHEREOF**, Sponsor and Distributee have executed this Agreement, as of the Effective Date.

*/s/ Daniel Gordon*
Daniel Gordon, Manager
GLD Sponsor Member, LLC
Managing Member of Sagaliam Sponsor, LLC

*/s/ Daniel Gordon*
GLD Sponsor Member, LLC
Daniel Gordon, Manager

EX-10.7 5 ex10-7.htm

**Exhibit 10.7**

# SECURITIES DISTRIBUTION AGREEMENT

This Securities Distribution Agreement ("***Agreement***") is effective this 25th day of April, 2023 ("***Effective Date***") between GLD Sponsor Member LLC, a Delaware limited liability company, whose address is 11420 Santa Monica Boulevard, Box 251961, Los Angeles CA 90025 ("***GLD***") and GLD Partners, LP, a Delaware limited partnership, whose address is 11420 Santa Monica Boulevard, Box 251961, Los Angeles CA 90025 ("***Distributee***" or "***Member***").

WHEREAS, the Distributee holds membership interests in GLD, and

WHEREAS, GLD desires to distribute securities to Distributee in the exact proportion to Distributee's membership interests in GLD (the "***Distributed Securities***"), and Distributee consents to the distribution (the "***Distribution***") of the Distributed Securities, and

WHEREAS, Sagaliam Sponsor, LLC has agreed with Sagaliam Acquisition Corporation (the "***Company***" or "***Sagaliam***") and EF Hutton, division of Benchmark Investments, LLC that the distribution of the Distributed Securities to Distributee is in compliance with all applicable agreements related to assignment of shares of the Company, and

WHEREAS, the Distributed Securities may be sold in the public markets only after they have been registered for resale in a current, effective registration statement or there is an exemption to the registration requirement available under the federal securities laws (collectively, the "***Transfer Restrictions***"), and

WHEREAS, there is no requirement to establish the availability of an exemption under the federal securities laws for this Distribution because there is no change of beneficial interest resulting from this Distribution to the Member.

Now, therefore, in consideration of the representations, warranties, covenants, payment and other agreements contained herein, the parties hereto hereby agree as follows:

## 1. DISTRIBUTION OF SHARES

**1.1.** On the terms and subject to the conditions of this Agreement, GLD hereby agrees to distribute the Distributed Securities pursuant to Section 1.2 below.

**1.2.** GLD will distribute an aggregate 400,000 Units (the Units trade in the public markets under the ticker symbol "SAGAU", CUSIP 78661R205) to Distributee as a distribution. GLD shall deliver transfer instructions for the Distributed Securities to Continental Stock Transfer & Trust Co., the stock transfer agent for Company ("***Transfer Agent***"). As used in this Agreement, "Distributed Securities" shall include all the Distributed Securities and all securities received (a) in replacement of the Distributed Securities, (b) as a result of stock dividends or stock splits in respect of the Distributed Securities and (c) as substitution for the Distributed Securities in a recapitalization, merger, reorganization or the like.

**1.3.** This distribution of the Distributed Securities will not result in any change in the percentage of beneficial interest of the Member/Distributee because the distribution is pro rata. No consideration has been or will be given by the Member/Distributee to GLD in exchange for this distribution. Under the available guidance by the Securities and Exchange Commission, a new holding period will not begin for the Member/Distributee.

**1.4.** GLD shall direct the Company to instruct the Transfer Agent to distribute the Distributed Securities to the Distributee in book entry form in the exact proportion to the Distributee's membership interests in GLD.

**2. COMPLIANCE WITH LAWS AND REGULATIONS.** The distribution of the Distributed Securities will be subject to and conditioned upon compliance by GLD and the Distributee with all applicable state and federal statutes, rules and regulations.

**3. TRANSFER RESTRICTIONS.** Distributee understands and agrees that the Distributed Securities will be noted in the shareholder records as restricted stock that may only be sold in the public markets if they are registered for resale in a current, effective registration statement or pursuant to an exemption under the federal securities laws. Distributee agrees to comply with any applicable leak-out agreement among EF Hutton, the Sagaliam Sponsor, LLC and the Company until and unless those restrictions expire or Distributee is released from such restrictions. If Distributee should request the issuance of a paper stock certificate at any time, a Rule 144 restrictive legend will be stamped on the certificate with the usual wording used by the Transfer Agent which is substantially as set forth below:

> **"The shares represented by this certificate have not been registered under the Securities Act of 1933, and may not be sold, transferred or otherwise disposed unless, in the opinion of counsel satisfactory to the issuer, the transfer qualifies for an exemption from or exemption to the registration provisions thereof."**

**4. GENERAL PROVISIONS.**

**4.1. Parties in Interest; Third Party Beneficiary.** No party other than GLD and Distributee (the "***Parties***") and their permitted successors and assigns shall be accorded or recognized as having any rights or interests in or under this Agreement as a third-party beneficiary or otherwise.

**4.2.** **Successors and Assigns.** Except as otherwise provided in this Agreement, this Agreement, and the rights and obligations of the parties hereunder, will be binding upon and inure to the benefit of their respective successors, assigns, heirs, executors, administrators and legal representatives.

**4.3.** **Governing Law and Arbitration.** This Agreement will be governed by and construed in accordance with the laws of the State of Delaware without giving effect to that body of laws pertaining to conflict of laws. Any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in the courts of Los Angeles County, California. Any arbitration will be held in Los Angeles, California. Any Party to the arbitration may elect to appear by video conference.

**4.4.** **Notices.** Any and all notices required or permitted to be given to a party pursuant to the provisions of this Agreement will be in writing and will be effective and deemed to provide such party sufficient notice under this Agreement on the earliest of the following: (a) at the time of personal delivery, if delivery is in person; (b) one (1) business day after deposit with an express overnight delivery using Federal Express, UPS or similar service for United States deliveries, or two (2) business days after such deposit for deliveries outside of the United States; or (c) three (3) business days after deposit in the United States mail by USPS Priority Express Mail for United States deliveries. All notices for delivery outside the United States will be sent by express courier such as those referenced above. All notices not delivered personally will be sent with postage and/or other charges prepaid and properly addressed to the party to be notified at the address set forth below the signature lines of this Agreement or at such other address as such other party may designate by one of the indicated means of notice herein to the other party hereto. A "***business day***" shall be a day, other than Saturday or Sunday, when United States banks in Los Angeles, California, are open for business.

**4.5.** **Further Assurances.** The Parties agree to execute such further documents and instruments and to take such further actions as may be reasonably necessary to carry out the purposes and intent of this Agreement.

**4.6.** **Titles and Headings.** The titles, captions and headings of this Agreement are included for ease of reference only and will be disregarded in interpreting or construing this Agreement. Unless otherwise specifically stated, all references herein to "sections" and "exhibits" will mean "sections" and "exhibits" to this Agreement.

**4.7.** **Entire Agreement**. This Agreement and the documents referred to herein constitute the entire agreement and understanding of the parties with respect to the subject matter of this Agreement, and supersede all prior understandings and agreements, whether oral or written, between or among the Parties hereto with respect to the specific subject matter hereof.

**4.8. <u>Severability</u>.** If any provision of this Agreement is determined by any court of competent jurisdiction to be invalid, illegal or unenforceable, such provision will be enforced to the maximum extent possible given the intent of the parties hereto. If such clause or provision cannot be so enforced, such provision shall be stricken from this Agreement and the remainder of this Agreement shall be enforced as if such invalid, illegal or unenforceable clause or provision had (to the extent not enforceable) never been contained in this Agreement. Notwithstanding the forgoing, if the value of this Agreement based upon the substantial benefit of the bargain for any party is materially impaired, which determination as made by the presiding court of competent jurisdiction shall be binding, then both parties agree to substitute such provision(s) through good faith negotiations.

**4.9. <u>Amendment and Waivers</u>.** Terms of this Agreement may be amended or waived only by a written agreement executed by GLD and Distributee, provided that any term hereof may be waived by any waiving party on such party's own behalf, without the consent of any other party. Any amendment or waiver will be binding upon all parties hereto and each of their respective successors and assigns. No delay or failure to require performance of any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance. No waiver granted under this Agreement as to any one provision herein shall constitute a subsequent waiver of such provision or of any other provision herein, nor shall it constitute the waiver of any performance other than the actual performance specifically waived.

**4.10. <u>Confidentiality</u>.** Unless required by applicable law, Distributee and GLD agree to keep confidential and not disclose the existence of this Agreement, the terms and conditions of this Agreement and the transactions contemplated hereby, the discussions and negotiations regarding this Agreement and any other related information.

**4.11. <u>Counterparts; Facsimile Signatures</u>.** This Agreement may be executed in any number of counterparts, each of which when so executed and delivered will be deemed an original, and all of which together shall constitute one and the same agreement. This Agreement may be executed and delivered by facsimile and upon such delivery the facsimile signature will be deemed to have the same effect as if the original signature had been delivered to the other party.

**IN WITNESS WHEREOF**, GLD and Distributee have executed this Agreement, as of the Effective Date.

| | |
|---|---|
| */s/ Daniel Gordon* | */s/ Daniel Gordon* |
| GLD Sponsor Member, LLC<br>Daniel Gordon, Manager | Daniel Gordon, President<br>GLD Management, Inc., General Partner<br>GLD Partners, LP |

EX-99.1 6 ex99-1.htm

**Exhibit 99.1**

**JOINT FILING AGREEMENT**

AGREEMENT dated as of May 10, 2023 by and between GLD Sponsor Member, LLC, a Delaware limited liability company, GLD Partners, LP, a Delaware limited partnership and Daniel L. Gordon (together, the "Parties").

Each Party hereto represents to the other Party that it is eligible to use Schedule 13D to report its beneficial ownership of common stocks, $0.0001 par value per share of common stock, of Sagaliam Acquisition Corp. Each Party hereto agrees that the Schedule 13D, dated May 10, 2023, relating to such beneficial ownership, is filed on behalf of each of them.

Each of the Parties agrees to be responsible for the timely filing of the Schedule 13D and any and all amendments thereto and for the completeness and accuracy of the information concerning itself contained in the Schedule 13D, and the other Party to the extent it knows or has reason to believe that any information about the other Party is inaccurate.

Dated: May 10, 2023

GLD SPONSOR MEMBER, LLC

*/s/ Daniel Gordon*

Daniel L. Gordon
Managing Member

Dated: May 10, 2023

GLD PARTNERS, LP

By: GLD Management, Inc., its General Partner

*/s/ Daniel Gordon*

Daniel L. Gordon
President, GLD Management, Inc.

Dated: May 10, 2023

*/s/ Daniel Gordon*

Daniel L. Gordon