Exhibit 16, 5th Amendment

**FIFTH AMENDMENT**
**TO**
**MEMBERSHIP INTEREST PURCHASE AGREEMENT**

This Fifth Amendment to Membership Interest Purchase and Sale Agreement is entered into effective as of the 23rd day of June, 2023 (the "***Fifth Amendment***"), by and among GLD Sponsor Member LLC, a Delaware limited liability company ("***Seller***"), Sagaliam Sponsor, LLC, a Delaware limited liability company ("***Company***") and BN Holdings Trust, a Nevada trust ("***Buyer***").

**Recitals:**

**WHEREAS**, the parties hereto (the "***Parties***") entered into that certain Membership Interest Purchase Agreement, dated as of March 23, 2023 and that certain First Amendment to Membership Interest Purchase Agreement, dated as of April 14, 2023 and that certain Second Amendment to Membership Interest Purchase Agreement, dated as of April 28, 2023, and that certain Third Amendment to Membership Interest Purchase Agreement, dated as of May 12, 2023, and that certain Fourth Amendment to Membership Interest Purchase Agreement, dated as of June 2, 2023 (collectively, the "***Agreement***"); and

**WHEREAS**, the Parties desire to amend the Agreement as set forth below subject to the terms and conditions set forth herein;

**NOW, THEREFORE**, in consideration of the mutual covenants, representations, warranties and agreements contained herein, and or other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Parties hereby agree as follows:

1. Recitals; Definitions. The recitals set forth above are true and correct and are incorporated herein by this reference. Capitalized terms used herein and not otherwise defined shall have the meaning set forth in the Agreement.

2. Amendments.

   (a) Section 2.2 is deleted in its entirety and replaced with the following:

   "Section 2.2 Closing of the Transactions Contemplated by this Agreement. The consummation of the transactions contemplated by this Agreement (the "***Closing***") shall take place at 10:00 a.m., New York time, on or before June 27, 2023 (the "***Closing Date***"). In the event the Closing occurs, the Closing shall be deemed effective, and the events scheduled for the Closing Date herein shall be deemed to occur simultaneously, as of 12:01 a.m. New York time on the Closing Date. **THE PARTIES ACKNOWLEDGE AND AGREE THAT IN THE EVENT THAT THE CLOSING DOES NOT OCCUR ON OR BEFORE THE CLOSING DATE THAT THE AGREEMENT SHALL TERMINATE AUTHOMATICALLY AND SELLER SHALL HAVE NO FURTHER OBLIGATIONS TO BUYER UNDER THE AGREEMENT.**"

DS

(b) Section 2.3(b)(i) is deleted in its entirety and replacement with the following:

"Section 2.3(b)(i) At Closing, Buyer shall execute and deliver a promissory note, in the form attached hereto as Exhibit A, in favor of Seller in an amount equal to the Purchase Price and the Closing Indebtedness (the "***Promissory Note***"). In addition, the Buyer shall cause Kelli D. Austin, Co-Trustee of Buyer, to execute and deliver at Closing a Personal Guaranty, in the form attached hereto as Exhibit B (the "***Guaranty***"), guarantying full payment of the amounts due under the Promissory Note."

3. References. All references to the Agreement in any document, instrument, agreement, or writing delivered pursuant to the Agreement (as amended hereby) shall hereafter be deemed to refer to the Agreement as amended hereby.

4. Ratification. The terms and conditions of the Agreement, as amended hereby, are hereby ratified, confirmed and approved in their entirety by the Parties, shall continue in full force and effect and are enforceable in accordance therewith.

5. Representations and Warranties. Each Party hereto represents and warrants that (a) it is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization; (b) it has full power and authority to enter into this Fifth Amendment and to perform its obligations hereunder; (c) the execution and delivery of this Fifth Amendment by it and the performance by it of its obligations hereunder have been duly and validly authorized by all necessary action; and (d) it has not relied on any representation, warranty, covenant, understanding, agreement, written or oral, discussions, or negotiation not expressly contained herein or in the Agreement in entering into this Fifth Amendment. Notwithstanding the foregoing and in addition thereto, the Buyer represents and warrants to the Seller that (x) it possesses the funds and capital necessary to complete the transactions contemplated by the Agreement, and (y) there are no outstanding or unsatisfied conditions precedent to the Buyer's performance under the Agreement and Buyer expressly waives any conditions precedent to its performance under the Agreement.

6. No Third-Party Beneficiaries. Except as expressly provided herein, this Fifth Amendment shall not confer any rights or remedies upon any Person other than the Parties and their respective successors and permitted assigns.

7. Miscellaneous Provisions. THIS FIFITH AMENDMENT WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES THEREOF. This Fifth Amendment may be executed by facsimile and in counterparts and each counterpart when taken together will constitute one agreement.

8. **RELEASE. For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Buyer, for itself and its successors and assigns, fully and without reserve, releases, acquits, and forever discharges Seller and the Company, together with**

DS

**their respective successors and assigns, officers, directors, employees, representatives, trustees, attorneys, agents and affiliates (collectively the "Released Parties" and individually a "Released Party") from any and all actions, claims, demands, causes of action, judgments, executions, suits, debts, liabilities, costs, damages, expenses or other obligations of any kind and nature whatsoever, direct and/or indirect, at law or in equity, whether now existing or hereafter asserted, whether absolute or contingent, whether due or to become due, whether disputed or undisputed, whether known or unknown (INCLUDING, WITHOUT LIMITATION, ANY OFFSETS, REDUCTIONS, REBATEMENT, OR CLAIMS WITH RESPECT TO THE NEGLIGENCE OF ANY RELEASED PARTY) (collectively, the "Released Claims"), for or because of any matters or things occurring, existing or actions done, omitted to be done, or suffered to be done by any of the Released Parties, in each case, on or prior to the Effective Date and are in any way directly or indirectly arising out of or in any way connected to any of this Fifth Amendment, the Agreement, or any of the transactions contemplated hereby or thereby (collectively, the "Released Matters"). Buyer hereby further agrees that it will not sue any Released Party on the basis of any Released Claim released, remised and discharged pursuant to this Section 8. In entering into this Fifth Amendment, Buyer acknowledges and agrees that it has consulted with, and has been represented by, legal counsel and expressly disclaims any reliance on any representations, acts or omissions by any of the Released Parties and hereby agrees and acknowledges that the validity and effectiveness of the releases set forth herein do not depend in any way on any such representations, acts and/or omissions or the accuracy, completeness or validity hereof. The provisions of this Section 8 shall survive the termination of this Fifth Amendment, the Agreement and payment in full of the Purchase Price.**

9. **Entire Agreement. THIS FIFTH AMENDMENT AND THE AGREEMENT CONSTITUTE THE ENTIRE UNDERSTANDING AMONG THE PARTIES HERETO WITH RESPECT TO THE SUBJECT MATTER HEREOF AND SUPERSEDE ANY PRIOR AGREEMENTS, WRITTEN OR ORAL, WITH RESPECT THERETO.**

10. Extension Fee. The Buyer shall transmit, or shall cause to be transmitted, by wire transfer to Continental Stock Transfer, on behalf of Sagaliam Acquisition Corp. ("SAGA"), the sum of $57,380.22 for the monthly extension fee due June 23, 2023 (the "***Extension Fee***").

11. Expenses; Attorneys' Fees**.** In the event that Seller is required to initiate any legal proceeding to enforce its rights and remedies under the Agreement, the Promissory Note or the Guaranty, the Buyer shall pay, in addition to all other remedies which to which the Seller may be entitled, the reasonable costs and expenses (including, without limitation, those incident to appellate, bankruptcy and post-judgment proceedings) incurred by the prevailing party in conducting the legal proceeding, including reasonable attorneys' fees and expenses and court costs.

12. Counterparts**.** This Fifth Amendment may be signed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement. Transmission by facsimile or other electronic transmission of an executed

DS

counterpart of this Fifth Amendment shall be deemed to constitute due and sufficient delivery of such counterpart.

**IN WITNESS WHEREOF**, the Parties have executed this Amendment as of the date first above written.

BUYER

*RN HOLDINGS TRUST*

DocuSigned by:
B1826AE03D0645B...

By: __________
Its:

SELLER

*GLD SPONSOR MEMBER, LLC*

DocuSigned by:
F0AD240689F9439...

By: __________
Its:

COMPANY

*SAGALIAM SPONSOR, LLC*

DocuSigned by:
F0AD240689F9439...

By: __________
Its:

**Exhibit A**

**PROMISSORY NOTE**

$999,999.70 June 26, 2023

FOR VALUE RECEIVED, the undersigned, **BN HOLDINGS TRUST**, a Nevada Trust with a principal place of business at 3315 Bridgette Lane, Mont Belvieu, TX 77523 (the "Borrower"), promises to pay to the order of **GLD SPONSOR MEMBER, LLC**, a Delaware limited liability company with a principal place of business at 10940 Wilshire Boulevard, Suite 705, Los Angeles, California 90024 ("Lender"), the principal sum of **NINE HUNDRED NINETY NINE THOUSAND NINE HUNDRED NINETY NINE DOLLARS and 70/100 ($999,999.70) DOLLARS** (the "Principal Amount"), on or before June 29, 2023 as more fully described herein (the "Maturity Date").

Borrower shall make a one-time payment of Five Hundred Thousand Dollars no later than June 28, 2023 which payment shall be applied against the Principal Amount. In the event that the balance of the Principal Amount is not paid, in full, by the Maturity Date, interest on the Principal Amount shall accrue and be due and payable at the Interest Rate. As used herein, the term "Interest Rate" shall mean a rate of interest of fifteen percent (15.0%) per annum, but in no event shall the Interest Rate be in excess of the Maximum Rate (as hereinafter defined).

Each payment hereunder shall be credited first to Lender's collection expenses, next to late charges, next to unpaid interest, and the balance, if any, to the reduction of the Principal Amount. The interest on this Note shall be calculated on the basis of a 30-day month and a 360-day year.

This Note may be prepaid in whole or in part at any time, without penalty or premium.

Borrower hereby waives all demands for payment, presentations for payment, notices of intention to accelerate maturity, notices of acceleration of maturity, demand for payment, protest, notice of protest and notice of dishonor, to the extent permitted by law. Borrower further waives trial by jury. No extension of time for payment of this Note or any installment hereof, no alteration, amendment or waiver of any provision of this Note and no release or substitution of any collateral securing Borrower's obligations hereunder shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower under this Note.

Any forbearance by the holder of this Note in exercising any right or remedy hereunder shall not be a waiver or preclude the exercise of any right or remedy by the holder of this Note. The acceptance by the holder of this Note of payment of any sum payable hereunder after the due date of such payment shall not be a waiver of the right of the holder of this Note to require prompt payment when due of all other sums payable hereunder or to declare a default for failure to make prompt payment.

If this Note is placed in the hands of an attorney for collection, Borrower shall pay all costs incurred and reasonable attorneys' fees for legal services in the collection effort, whether or not suit be brought.

At the election of the holder of this Note, all payments due hereunder may be accelerated, and this Note shall become immediately due and payable without notice or demand, upon the occurrence of any of the following events (each an "Event of Default"): (1) Borrower fails to pay on or before the date due, any amount payable hereunder; (2) Borrower fails to perform or observe any other term or provision of this Note with respect to payment; or (3) Borrower fails to perform or observe any other term or provision of this Note. In addition to the rights and remedies provided herein, the holder of this Note may exercise any other right or remedy in any other document, instrument or agreement evidencing, securing or otherwise relating to the indebtedness evidenced hereby in accordance with the terms thereof, or under applicable law, all of which rights and remedies shall be cumulative.

If this Note is transferred in any manner, the right, option or other provisions herein shall apply with equal effect in favor of any subsequent holder hereof.

Notwithstanding anything to the contrary contained herein, under no circumstances shall the aggregate amount paid or agreed to be paid hereunder exceed the highest lawful rate permitted under applicable usury law (the "Maximum Rate") and the payment obligations of Borrower under this Note are hereby limited accordingly. If under any circumstances, whether by reason of advancement or acceleration of the maturity of the unpaid principal balance hereof or otherwise, the aggregate amounts paid on this Note shall include amounts which by law are deemed interest and which would exceed the Maximum Rate, Borrower stipulates that payment and collection of such excess amounts shall have been and will be deemed to have been the result of a mistake on the part of both Borrower and the holder of this Note, and the party receiving such excess payments shall promptly credit such excess (to the extent only of such payments in excess of the Maximum Rate) against the unpaid principal balance hereof and any portion of such excess payments not capable of being so credited shall be refunded to Borrower.

Borrower hereby agrees to indemnify, defend and hold harmless Lender from and against any and all claims, loss, cost, damage or expense (including, without limitation, reasonable attorneys' fees) which may be incurred by Lender in connection with or as a result of any default (following notice and the opportunity to cure provided for in such document) by Borrower under the Note (following notice and the opportunity to cure provided for in such document).

By its execution of this Note, Borrower acknowledges, agrees and confirms that it has no defense, offset or counterclaim for any occurrence in relation to this Note and Borrower acknowledges that Lender has complied with all of its obligations hereunder.

All payments of principal and interest hereunder are payable in lawful money of the United States of America and shall be made by wire transfer to the account of Lender, pursuant to wiring instructions as may be instructed by Lender.

In the event that an action to enforce this Note results in the entry of a judgment (in foreclosure or otherwise) against the Borrower, interest on the judgment shall continue to accrue at the Interest Rate through the date of satisfaction of the judgment debt in full, and not at the statutory post-judgment rate of interest. Borrower waives any right and/or claim to have the post-judgment interest accrue at the statutory rate.

This Note shall be binding on the parties hereto and their respective heirs, legal representatives, executors, successors and assigns.

This Note shall be construed without any regard to any presumption or rule requiring construction against the party causing such instrument or any portion thereof to be drafted.

This Note shall be governed by the laws of the State of New York without regard to choice of law consideration. Borrower hereby irrevocably consents to the jurisdiction of the state or federal courts residing in the County of New York, State of New York in connection with any action or proceeding arising out of or relating to this Note.

This Note may not be changed or terminated orally.

A determination that any portion of this Note is unenforceable or invalid shall not affect the enforceability or validity of any other provision, and any determination that the application of any provision of this Note to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision to the extent legally permissible and otherwise as it may apply to other persons or circumstances.

**JURY TRIAL WAIVER. BORROWER AGREES THAT ANY SUIT, ACTION OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT BY BORROWER OR THE HOLDER OF THIS NOTE ON OR WITH RESPECT TO THIS NOTE OR THE DEALINGS OF THE PARTIES WITH RESPECT HERETO OR THERETO, SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY. BORROWER AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING. BORROWER ACKNOWLEDGES AND AGREES THAT AS OF THE DATE HEREOF THERE ARE NO DEFENSES OR OFFSETS TO ANY AMOUNTS DUE IN CONNECTION WITH THE LOAN. FURTHER, BORROWER WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY SPECIAL, EXEMPLARY, PUNITIVE, CONSEQUENTIAL OR OTHER DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. BORROWER ACKNOWLEDGES AND AGREES THAT THIS PARAGRAPH IS A SPECIFIC AND MATERIAL ASPECT OF THIS NOTE AND THAT LENDER WOULD NOT EXTEND CREDIT TO BORROWER IF THE WAIVERS SET FORTH IN THIS PARAGRAPH WERE NOT A PART OF THIS NOTE.**

[Remainder of this page intentionally left blank.]

IN WITNESS WHEREOF, the undersigned has executed this Note on the date set forth above.

**BORROWER:**

BN HOLDINGS TRUST

______________________________
Kelli D. Austin, Co-Trustee

**Exhibit B**

## PERSONAL GUARANTY

This PERSONAL GUARANTY (this "**Guaranty**") is made effective as of June 27, 2023 by Kelli D. Austin, an individual ("**Guarantor**"), in favor of GLD Sponsor Member, LLC, a Delaware limited liability company ("**Seller**").

1. **Guarantee of Note.** This Guaranty is executed in connection with the purchase of Seller's Membership Interests (the "**Membership Interests**") in Sagaliam Sponsor, LLC, a Delaware limited liability company (the "**Company**"), by BN Holdings Trust, a Nevada trust ("**Buyer**"). Guarantor is the Trustee of Buyer, and will benefit from the Buyer's purchase of the Membership Interest from Seller. Buyer executed a promissory note in connection with its obligation to pay for its purchase of Seller's Membership Interests in the amount of $999,999.70 (the "**Note**"). Guarantor hereby unconditionally and irrevocably guarantees full payment and performance by Buyer of all of Buyer's obligations under the Note and any modifications and extensions of the Note (collectively, the "**Obligations**"). All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Note.

2. **Purpose and Consideration.** The execution and delivery of this Guaranty by Guarantor is a condition to Seller's willingness to sell its Membership Interest to Buyer in consideration of the Note, and Guarantor recognizes that Seller will rely upon this Guaranty. Guarantor has a significant financial interest in Buyer, and Buyer is becoming the sole Member of the Company, and, accordingly, Guarantor acknowledges that Guarantor will receive material direct and indirect benefits from Buyer's purchase of Seller's Membership Interest in the Company and Buyer's execution of the Note.

3. **Guarantee is Independent and Absolute.** The obligations of Guarantor hereunder are independent of the obligations of Buyer and of any other person who may become liable with respect to the Obligations. Guarantor is jointly and severally liable with Buyer and with any other guarantor for the full and timely payment and performance of all of the Obligations. Guarantor expressly agrees that a separate action or actions may be brought and prosecuted against Guarantor (or any other guarantor), whether or not any action is brought against Buyer, any other guarantor, or any other person for any Obligations guaranteed hereby and whether or not Buyer, any other guarantor, or any other persons are joined in any action against Guarantor. Guarantor further agrees that Seller shall have no obligation to proceed against any security for the Obligations prior to enforcing this Guaranty against Guarantor, and that Seller may pursue or omit to pursue any and all rights and remedies Seller has against any person or with respect to any security in any order or simultaneously or in any other manner. All rights of Seller and all obligations of Guarantor hereunder shall be absolute and unconditional irrespective of (a) any lack of validity or enforceability of the Note, and (b) any other circumstances which might otherwise constitute a defense available to, or a discharge of the Buyer in respect of, the Obligations, until full payment thereof.

4. **Guarantee of Payment and Performance.** Guarantor's liability under this Guarantee is a guarantee of payment and performance of the Obligations and not of collectability, and is not conditioned or contingent upon the genuineness, validity or enforceability of the Notes, and Guarantor hereby waives any and all benefits and defenses and agrees that by doing so Guarantor

is liable even if Buyer had no liability at the time of execution of the Note or thereafter ceases to be liable. Guarantor's liability hereunder shall continue until all sums due under the Note have been paid in full and shall not be limited or affected in any way by any impairment or any diminution or loss of value of any security or collateral for the Note.

5. **Consents.** Guarantor hereby consents to and waives notice of any extensions of time for performance which Seller may grant to Buyer and to any modifications or amendments of the Note or extensions or renewals of the terms thereof. Guarantor waives notice of any default in the payment of any amount due under the Note.

6. **Waivers by Guarantor.** Guarantor hereby waives (1) presentment, demand, protest and notice of protest, notice of dishonor and of non-payment, notice of acceptance of this Guarantye, and diligence in collection; (2) notice of the existence, creation, or incurring of any new or additional Obligations under the Note; (3) any right to require Seller to proceed against, give notice to, or make demand upon the Buyer; (4) any right to require Seller to proceed against or exhaust any security or to proceed against or exhaust any security in any particular order; (5) any right to require Seller to pursue any remedy of Seller; (6) any right to direct the application of any security held by Seller; (7) any defense arising out of any disability or other defense of Buyer, including bankruptcy, dissolution, liquidation, cessation, impairment, modification, or limitation, from any cause, of any liability of the Buyer, or of any remedy for the enforcement of such liability; (8) any statute of limitations affecting the liability of Guarantor hereunder; and (9) any other defenses available to a surety under applicable law.

7. **Bankruptcy Reimbursements.** Guarantor hereby agrees that if all or any part of the Obligations paid to Seller by Buyer or any other party liable for payment and satisfaction of the Obligations (other than Guarantor) are recovered from Seller in any bankruptcy proceeding, Guarantor shall reimburse Seller immediately on demand for all amounts of such Obligations so recovered from Seller, together with interest thereon at the default rate set forth in the Notes from the date such amounts are so recovered until repaid in full to Seller, and, for this purpose, this Guarantee shall survive repayment of the Notes.

8. **Jurisdiction and Venue.** Each party hereto hereby expressly and irrevocably agrees and consents that any suit, action, or proceeding arising out of or relating to this Guarantee to which it is a party and the transactions contemplated therein may be instituted by any party hereto in any state or federal court sitting in the County of New York and State of New York, by the execution and delivery of this Guaranty, expressly and irrevocably waives any objection that it may have now or hereafter to the laying of the venue or to the jurisdiction of any such suit, action, or proceeding, and irrevocably submits generally and unconditionally to the non-exclusive jurisdiction of any such court in any such suit, action, or proceeding.

9. **Assignability.** This Guaranty shall be binding upon Guarantor and Guarantor's heirs and representatives and shall inure to the benefit of Seller and Seller's successors and assigns.

10. **Payment of Costs of Enforcement.** In the event any action or proceeding is brought to enforce this Guarantee, Guarantor shall pay all reasonable costs and expenses of Seller in connection with such action or proceeding, including, without limitation, reasonable attorneys' fees incurred by Seller.

11. **Notices.** Any notice required or permitted to be given by Guarantor or Seller under this Guaranty shall be in writing and will be deemed given (a) upon personal delivery, (b) on the first business day after receipted delivery to a courier service which guarantees next-business day delivery, or (c) on the third business day after mailing, by registered or certified United States mail, postage prepaid, in any case to the appropriate party at its address set forth below:

**To Seller**:

GLD Sponsor Member, LLC
10940 Wilshire Boulevard, Suite 705
Los Angeles, California 90024
Fax: (212) 245-1053

**To Guarantor:**

Kelli D. Austin
3315 Bridgette Lane
Mont Belvieu, TX 77523

Either party may change such party's address for notices or copies of notices by giving notice to the other party in accordance with this Section 11.

12. **Severability of Provisions**. If any provision hereof shall be invalid or unenforceable, then such provision shall be limited to the extent required to make it valid and enforceable, and, if required, severed from this Guaranty, and the remainder of the document shall remain in full force and effect.

13. **Waiver**. Neither the failure of Seller to exercise any right or power given hereunder or to insist upon strict compliance by Buyer, Guarantor, any other guarantor, or any other person with any of its obligations set forth herein or in the Note shall constitute a waiver of Seller's right to demand strict compliance with the terms and provisions of this Guaranty.

14. **Applicable Law**. This Guaranty and the rights and obligations of the parties hereunder shall be governed by and interpreted in accordance with the internal laws of the State of New York, without regard to conflict of law principles.

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the day and year first above written.

GUARANTOR:

_______________________________
Kelli D. Austin